IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANE DOE, a minor, by her mother and natural guardian, Jennifer Nied, and JENNIFER NIED, individually, | : : : : | Civ. No. 3:23-CV-1118 |
| Plaintiffs, | : : | |
| v. | : : | (Magistrate Judge Bloom) |
| RIVERSIDE SCHOOL DISTRICT, d/b/a Riverside Junior/Senior High School, et al., | : : : : | |
| Defendants. | : | |

## MEMORANDUM OPINION

### I. Introduction

This case comes before us for consideration of a motion to dismiss filed by several defendants—Riverside School District (the "District"), Riverside School District Board of Education (the "School Board"), Robert Presley, Christopher Lazor, and Paul Brennan. (Doc. 18). Jennifer Nied filed this action on behalf of herself and her daughter Jane Doe, a minor student in the Riverside School District. (Doc. 1). The complaint alleges that Jane Doe was sexually assaulted off school grounds by another student who attended the same school, and that following that student's adjudication of guilt, the school failed to expel him or otherwise keep him

away from Jane Doe. (*See generally* Doc. 1). This, in turn, allegedly led to Jane Doe's abuser harassing her during school hours and school functions. (*Id.*).

The plaintiffs assert a host of claims against the School District and the School Board, as well as Paul Brennan, the Superintendent, and Robert Presley and Christopher Lazor, both of whom served as the principal of the school at some time during the alleged events. The plaintiffs bring claims of discrimination and retaliation under Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. §§ 1681, *et seq.*; claims alleging violations of the Fourteenth Amendment's Equal Protection and Substantive Due Process clauses under 42 U.S.C. § 1983; a *Monell*[1] claim under § 1983; and state law claims of negligence, negligence *per se*, breach of contract, intentional infliction of emotional distress, and negligent infliction of emotional distress. (*See* Doc. 1). These defendants have now moved to dismiss the claims against them, arguing

---

[1] *Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658 (1978).

that the plaintiffs have failed to state claims upon which relief can be granted. (Doc. 18).[2]

The motion is fully briefed and ripe for resolution. (Docs. 21, 25, 28, 32, 33). After consideration, the defendants' motion will be granted in part and denied in part.

## II.  Background

The factual background of this Memorandum Opinion is taken from the well-pleaded facts alleged in the plaintiffs' complaint (Doc. 1), which we must accept as true for purposes of the instant motion to dismiss. The minor plaintiff, Jane Doe, was enrolled as a student in the Riverside School District at Riverside Junior/Senior High School, located in Lackawanna County, Pennsylvania. (Doc. 1 ¶ 9). Jane Doe was a student with a disability and had a 504 Service Agreement with the District that outlined the accommodations she needed. (*Id.* ¶ 27).

In January of 2021, Jane Doe was sexually assaulted by A.P., a minor who was also enrolled at Riverside Junior/Senior High School. (*Id.* ¶ 28). The assault occurred outside of the school setting in Luzerne

---

[2] The remaining defendants, Bryan and Nicole Pica, have also filed a motion to dismiss (Doc. 20), which we will address through a separate Memorandum Opinion.

County, Pennsylvania. (*Id.* ¶ 29). Following the assault, the Luzerne County District Attorney's Office filed a Petition Alleging Delinquency, alleging that A.P. raped and/or sexually assaulted Jane Doe. (Doc. 1 ¶ 30). After a hearing, the Court adjudicated A.P. delinquent of Felony 2 Sexual Assault pursuant to 18 Pa. Cons. Stat. § 3124.1. (*Id.* ¶ 31).

The complaint alleges that throughout the pendency of the juvenile proceedings against A.P., Jane Doe's mother, Jennifer Nied, was in direct communication with the District regarding the proceedings. (*Id.* ¶ 33). Specifically, Jennifer Nied alleges that she informed the District of A.P.'s delinquency adjudication at the conclusion of the juvenile case. (*Id.* ¶ 36). However, the complaint asserts that despite her concerns voiced to the District regarding A.P. having contact with Jane Doe during school, the District told Jennifer Nied that there was nothing that could be done to protect Jane Doe from A.P. (*Id.* ¶¶ 34, 37-38).

Thus, following the juvenile adjudication, A.P. was permitted to attend the same lunch period as Jane Doe. (Doc. 1 ¶ 39). It is further alleged that A.P. was permitted to attend the semi-formal dance in January of 2022. (*Id.* ¶ 42). At the dance, A.P. sat at a table directly behind Jane Doe and her friends and allegedly harassed, embarrassed,

and threatened Jane Doe, causing her to spend most of the evening crying in the restroom. (*Id.* ¶¶ 43, 45). Some time after the semi-formal dance, the complaint alleges that A.P. verbally harassed Jane Doe in the hallway during school, mockingly shouting at her. (*Id.* ¶ 46). Accordingly, Nied contacted the District, informed individuals within the District of the ongoing issues, and requested a meeting with the principals and guidance counselor. (*Id.* ¶ 48).

At the meeting on February 23, 2022, the District informed Nied that it was unaware of A.P.'s juvenile adjudication or that A.P. was on juvenile probation, although the complaint alleges that the District was made aware not only by Nied but by A.P.'s juvenile probation officer. (Doc. 1 ¶¶ 49, 50). The District further informed Nied that there was nothing it could do to protect Jane Doe during school hours. (*Id.* ¶ 49). Thus, it is alleged that school continued to be a threatening and hostile environment for Jane Doe due to the District's failure to protect her from A.P. (*Id.* ¶ 54). As an example, the complaint asserts that Jane Doe was forced to remain in a class taught by a teacher who created a hostile environment for her, despite her request to be transferred to another class, which was denied by the District. (*Id.* ¶ 56).

The complaint alleges that due to the District's inaction and failure to protect Jane Doe, Jane Doe suffered and continues to suffer from physical and psychological harm, including self-mutilation, anxiety, decreased appetite, engaging in dangerous sexual activity, a decline in grades and attendance at school, post-traumatic stress disorder, depression, and panic attacks. (*Id.* ¶ 51). Further, the plaintiffs allege that Jane Doe's education was substantially interfered with after the District created a hostile educational environment by permitting A.P. unfettered access to Jane Doe during school hours. (*Id.* ¶¶ 40, 47, 53-56).

The plaintiffs filed this complaint on July 5, 2023. (Doc. 1). The complaint names the District, the School Board, Presley, Lazor, and Brennan as defendants, as well as Bryan and Nicole Pica, the parents and guardians of A.P. (*Id.*). The plaintiffs assert claims under Title IX, alleging discrimination and retaliation by the District and the School Board; claims under § 1983 against the District, the School Board, Presley, Lazor, and Brennan; state law claims of negligence, negligence *per se*, and breach of contract against the District and the School Board; and state law claims of intentional infliction of emotional distress and negligent infliction of emotional distress against Presley, Lazor, and

6

Brennan. The complaint also asserts claims of negligence *per se* and negligence against Bryan and Nicole Pica, A.P.'s parents.

The District, the School Board, Presley, Lazor, and Brennan have now filed the instant motion to dismiss. (Doc. 18). In their motion, the defendants assert that the plaintiffs have failed to state a Title IX claim, that the § 1983 claims fail as a matter of law, and that the state law claims are barred by the Political Subdivision Tort Claims Act ("PSTCA"). They further contend that the plaintiffs' state law claims fail as a matter of law.

This motion is fully briefed and ripe for resolution. (Docs. 21, 25, 28, 32, 33). After consideration, the motion will be granted in part and denied in part as follows: the motion will be granted with respect to the Title IX retaliation claim, § 1983 claims, state law claims, and claim for punitive damages against the District, as well as the request that the School Board be dismissed as a defendant; the motion will be granted as to the claims of intentional and negligent infliction of emotional distress against Preslesy, Lazor, and Brennan; and the motion will be denied as to the Title IX discrimination claim against the District.

III.   **Discussion**

A. **Motion to Dismiss - Standard of Review**

The defendants have filed a motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) permits the court to dismiss a complaint if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under federal pleading standards, a complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim for relief under this pleading standard, a court must accept the factual allegations in the complaint as true, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and accept "all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court is not required to accept legal conclusions or "a formulaic recitation of the elements of a cause of action." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

As the Third Circuit Court of Appeals has aptly summarized:

[A]fter *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id.* Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Phillips*, 515 F.3d at 234–35. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

Generally, when considering a motion to dismiss, a court relies on the complaint and its attached exhibits, as well as matters of public record. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). A court can also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are

based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Additionally, if the complaint relies on the contents of a document not physically attached to the complaint but whose authenticity is not in dispute, the court may consider such document in its determination. *See Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on any other part of the record when deciding a motion to dismiss. *Jordan*, 20 F.3d at 1261.

## B. The Motion will be Granted in Part and Denied in Part.

As we have noted, the defendants have moved to dismiss all the claims against them, arguing that the plaintiffs have failed to state a claim upon which relief can be granted. As we will discuss below, we will grant the defendants' motion as to the Title IX retaliation claim, § 1983 claims, state law claims, and claim for punitive damages against the District. Additionally, we will grant the motion as to the § 1983 claims and intentional and negligent infliction of emotional distress claims against Presley, Lazor, and Brennan. However, in our view, the plaintiffs have sufficiently pleaded their Title IX discrimination claim against the District. Accordingly, the motion will be denied as to this claim.

### 1. <u>The School Board will be Dismissed as a Defendant.</u>

At the outset, the defendants contend that any claims against the School Board must be dismissed, as the School Board is not a separate entity from the District. Several courts in this district have considered whether a school board is a proper party to a suit in which the plaintiff has also sued the school district. The consensus among these courts is that the school board is not a proper party to a suit in which the plaintiff has also sued the school district because the school board is not a political subdivision separate and apart from the District. *See e.g.*, *Smith v. Warwick Sch. Dist.*, 2016 WL 3854586, at *1 (E.D. Pa. July 8, 2016); *E.B. v. Woodland Hills Sch. Dist.*, 2010 WL 2817201, at *4 (W.D. Pa. July 16, 2010); *Young v. Pleasant Valley Sch. Dist.*, 2008 WL 417739, at *10 (M.D. Pa. Feb. 13, 2008). Accordingly, given that the plaintiffs' rights can be adjudicated through a suit against the District, we will dismiss the School Board as a defendant.

### 2. <u>The Plaintiffs' Title IX Discrimination Claim Survives, but the Retaliation Claim will be Dismissed.</u>

The plaintiffs assert claims against the District under Title IX, alleging discrimination and retaliation. The complaint alleges that Jane Doe was subjected to a hostile educational environment when the District

was aware of and permitted sexual harassment against her by her abuser, A.P. The complaint further alleges that Jane Doe was subjected to retaliation after she complained about the harassment. After consideration, we conclude that the plaintiff has sufficiently pleaded a claim for Title IX discrimination against the District, but her retaliation claim fails as currently pleaded.

Title IX prohibits entities receiving federal financial assistance from discriminating against, excluding, or denying benefits of an educational program or activity to individuals on the basis of sex. 20 U.S.C. § 1681(a). Under Title IX, the School District may be liable for student-on-student sexual harassment if the District (1) had "substantial control over both the harasser and the context in which the harassment occurred"; (2) "had 'actual knowledge' of the harassment"; (3) "was 'deliberately indifferent' to the harassment"; and (4) the harassment was so severe or pervasive that it effectively deprived the victim of access to educational benefits and opportunities provided by the school. *Lockhart v. Willingboro High School*, 170 F. Supp. 3d 722, 736 (D.N.J. 2015) (quoting *Davis v. Monroe Cnty. Bd. of Education*, 526 U.S. 629, 645, 650 (1999)).

We conclude that the complaint adequately pleads a claim of discrimination under Title IX. At the outset, it is undisputed that the District receives federal funds as required under § 1681. Further, the plaintiffs have pleaded that Jane Doe was subjected to sexual harassment. While the District contends that the harassment alleged by the plaintiff does not appear to be sexual in nature, it is clear from the complaint that the harassment of Jane Doe by A.P. is alleged to have stemmed from the earlier sexual assault perpetrated by A.P. As one court in this circuit has noted, "[w]hen a sexual assault triggers a course of harassment, the total course of events can be considered sexual harassment." *Goodwin v. Pennridge Sch. Dist.*, 389 F. Supp. 3d 304, 314 (E.D. Pa. 2019) (citing *C.S. v. Southern Columbia Sch. Dist.*, 2013 WL 2371413, at *9 (M.D. Pa. May 21, 2013)). Accordingly, we conclude that the complaint sufficiently alleges that Jane Doe was subjected to sexual harassment.

We further conclude that the complaint adequately pleads that the District had knowledge of the harassment, had control over the harasser and the context in which the harassment occurred, and was deliberately indifferent to the harassment. Here, the complaint alleges that the

District was informed by Jennifer Nied, as well as by A.P.'s juvenile probation officer, that A.P. was adjudicated delinquent of sexually assaulting Jane Doe. It is further alleged that A.P. harassed Jane Doe during school hours and at a school dance, and that Jennifer Nied informed the District of this harassment during a meeting with the principals and guidance counselor. The complaint asserts that even after the District was informed of the harassment, it did nothing to prevent A.P. from further harassing Jane Doe; in fact, it is alleged that A.P. was permitted to attend the same lunch period as Jane Doe, and that she was denied the opportunity to transfer out of a class in which the teacher was creating a hostile environment for her.

Finally, the plaintiffs have alleged that Jane Doe was denied educational benefits and opportunities due to the District's deliberate indifference. The complaint asserts that, in addition to the physical and emotional harm Jane Doe suffered, she also suffered a decline in her grades and an increase in absences from school due to A.P.'s continued harassment and the District's failure to stop it. She further alleges that she requested to be transferred out of a class in which she was subjected to a hostile environment because of the harassment, and the District

denied this request. While a decline in grades, by itself, is not sufficient to prove a denial of educational opportunities, *Davis*, 526 U.S. at 652, in our view, the allegations taken together are sufficient at this stage to show that Jane Doe was denied educational benefits or opportunities. Accordingly, we find that the allegations in the complaint are sufficient to state a claim for Title IX discrimination against the District, and this claim will proceed forward.[3]

Title IX also prohibits an entity receiving federal funds from retaliating against individuals who report or complain of sex discrimination. *Jackson v. Birmingham Bd. of Education*, 544 U.S. 167, 171 (2005). To state a retaliation claim, a plaintiff must show: "that he or she engaged in protected activity [under Title IX]; (2) defendant had knowledge of the protected activity; (3) adverse school-related action was taken against plaintiff; and (4) a causal connection between the protected

---

[3] The defendants have also challenged the plaintiffs' ability to recover punitive damages as to this Title IX claim. Although we are permitting the discrimination claim to proceed forward, we will dismiss the claim for punitive damages, as courts in this circuit have held that punitive damages are not recoverable against a municipal entity such as a school district under Title IX. *See M.S. ex rel. Hall v. Susquehanna Twp. Sch. Dist.*, 43 F. Supp. 3d 412, 433 (M.D. Pa. 2014); *Dawn L. v. Greater Johnstown Sch. Dist.*, 614 F. Supp. 2d 555, 573 (W.D. Pa. 2008).

activity and the adverse action." *B.W. v. Career Tech. Ctr. of Lackawanna Cnty.*, 422 F. Supp. 3d 859, 886 (M.D. Pa. 2019) (internal quotations and citations omitted); *Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545, 564 (3d Cir. 2017) ("Title VII's familiar retaliation framework 'generally governs' Title IX retaliation claims."). A complaint must allege "specific action taken by the [defendants] that can be found to be 'materially adverse' within the meaning of Title IX's prohibition against retaliation." *S.K. v. North Allegheny Sch. Dist.*, 168 F. Supp. 3d 786, 804 (W.D. Pa. 2016).

Here, we agree with the defendants that the plaintiffs have not sufficiently pleaded a Title IX retaliation claim. While the complaint alleges that Jennifer Nied made a verbal complaint of discrimination with the District concerning A.P.'s harassment of Jane Doe, the complaint fails to allege any intentional conduct by the District that would constitute an adverse action. Rather, the complaint relies on the District's inaction, rather than any affirmative action, to show that the District retaliated against the plaintiffs for complaining of the sexual harassment. Courts in this district have found that a plaintiff may not rely on a defendant's inaction or failure to remedy discrimination as intentional conduct to support a claim of retaliation under Title IX. *See*

*e.g.*, *B.W.*, 422 F. Supp. 3d at 887 ("The mere possibility that defendant intentionally failed to curb the harassment . . . falls short of the plausible showing of intentional conduct needed to identify a form of materially adverse action needed to state a claim for retaliation."); *S.K.*, 168 F. Supp. 3d at 805 (finding that the plaintiff's reliance on an allegation that the district "was unable to curb the harassment and/or did not sufficiently discipline her harassers" did not support a claim of retaliation). While the plaintiffs couch the allegations in terms that would suggest an affirmative action was taken, *e.g.*, that the District "compelled" Jane Doe to be in the same vicinity as her abuser, these allegations are simply an attempt to rephrase the District's inaction as affirmative action taken by the District to support a claim of retaliation. *See Morrow v. Balaski*, 719 F.3d 160, 179 (3d Cir. 2013) ("[M]erely restating the Defendants' inaction as an affirmative failure to act does not alter the passive nature of the alleged conduct.").

In this case, the plaintiff cannot rely on her allegations that the District failed to stop the harassment to sufficiently plead a retaliation claim against the District. Rather, "retaliation is, by definition, an intentional act." *Jackson*, 544 U.S. at 173-74. Accordingly, this claim fails

as currently pleaded, and we will dismiss the plaintiff's Title IX retaliation claim against the District.

### 3. The Plaintiffs' § 1983 Claims Fail as Currently Pleaded.

The plaintiffs also assert claims under § 1983, alleging violations of the Fourteenth Amendment. The complaint alleges that the District, along with the individual defendants, had a pattern or practice of dissuading students from reporting sexual harassment. The plaintiffs assert that this practice by the defendants violated Jane Doe's Fourteenth Amendment substantive due process rights, relying on the state-created danger doctrine. They also allege that this practice or custom violated the Equal Protection clause because it constituted disparate treatment of and had a disparate impact on female students in the District. However, after consideration, we conclude that the plaintiffs have not set forth sufficient allegations to support these § 1983 claims.

### a. State-Created Danger Claim

The plaintiffs assert that the District and the individual defendants are liable for substantive due process violations under the state-created danger doctrine. They claim that the defendants' inaction permitted the ongoing sexual harassment by A.P., which led to Jane Doe's injuries.

18

Generally, the state does not have an affirmative duty to protect citizens from the actions of private individuals. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 198-200 (1989). However, an exception exists when "the state acts to *create* or *enhance* a danger that deprives the plaintiff of his or her Fourteenth Amendment right to substantive due process." *Sanford v. Stiles*, 456 F.3d 298, 304 (3d Cir. 2006) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1205 (3d Cir. 1996) (emphasis in original)).

> To prevail on a state-created danger theory, a plaintiff must show:
>
> (1) the harm ultimately caused was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and (4) a state actor *affirmatively* used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Sanford*, 456 F.3d at 304-04 (quoting *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006) (internal quotation marks and footnotes omitted) (emphasis added). The Third Circuit has noted the significance of the affirmative act requirement, which "distinguishes cases where

19

officials might have done more from cases where officials created or increased the risk itself." *G.S. v. Penn-Trafford Sch. Dist.*, 813 F. App'x 799, 802 (3d Cir. 2020) (quoting *Morrow*, 719 F.3d at 179).

Thus, courts in this circuit have consistently held that a plaintiff fails to plead a state-created danger claim when she relies on the *inaction* of the defendants, rather than alleging an affirmative act. *See e.g.*, *Morrow*, 718 F.3d at 177-78 (school's failure to protect a student does not constitute an "affirmative act"); *Williams v. Jersey Shore Sch. Dist.*, -- F. Supp. 3d --, 2023 WL 3513677, at *8 (M.D. Pa. May 17, 2023) (dismissing a student's claim based on a district's failure to prevent bullying); *Lansberry v. Altoona Area Sch. Dist.*, 318 F. Supp. 3d 739, 755-56 (W.D. Pa. 2018) (failure to prevent bullying or follow school's own policy is not an affirmative act); *Brown v. Sch. Dist. of Phila.*, 456 F. App'x 88, 92-93 (3d Cir. 2011) (school district's lack of affirmative action was fatal to § 1983 claim). Accordingly, given that the plaintiffs have failed to identify any affirmative action taken by the District or the individual school officials, we conclude that this stated-created danger claim fails.

b. *Monell* Claim

A municipal entity may be liable for a constitutional violation under § 1983 if the violation was a direct result of the entity's policy, custom or practice. *Monell*, 436 U.S. at 695. However, an entity may not be held liable "solely because injuries were inflicted by its agents or employees." *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir. 2007). Rather, a plaintiff must demonstrate a "direct causal link" between the alleged constitutional violation and the municipal policy or custom. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). A plaintiff may show that either an official policy of the municipality was the moving force behind the violation, or that the municipality had an informal custom such that it operated as the municipality's policy. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986); *Monell*, 436 U.S. at 690. In either scenario, the plaintiff has the burden to show that the policy or custom was implemented or acquiesced in by a policymaker. *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990).

Further, the plaintiff must show "that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury." *Bd. of Cnty. Comm'rs of Bryan Cnty, Okl. v. Brown*, 520 U.S. 397,

404 (1997). The Third Circuit has held that "failures to act cannot form the basis of a valid § 1983 claim." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 433 n. 11 (3d Cir. 2006) (collecting cases); *see also G.S. v. Penn-Trafford Sch. Dist.*, 813 F. App'x 799, 803 (3d Cir. 2020) (school's failure to respond to reports of bullying not an affirmative act for § 1983 liability); *S.K.*, 168 F. Supp. 3d at 815 (same); *Young v. Pleasant Valley Sch. Dist.*, 2012 WL 1827194, at *6 (M.D. Pa. May 18, 2012) (dismissing student's claim that the school's failure to prevent student-on-student harassment violated her constitutional rights). This is particularly so in cases in which the underlying violative act—the sexual harassment—is committed by private actors rather than state actors. *D.R. by L.R. v. Middle Bucks Area Vocational Technical School*, 972 F.2d 1364, 1376 (3d Cir. 1992) (distinguishing sexual abuse by a teacher who is a state actor from student-on-student sexual abuse perpetrated by a private actor).

Here, the plaintiffs allege that the District's failure to act, either on its own or through the principals and superintendent, was the moving force behind the alleged constitutional violation. Specifically, the plaintiffs contend that the District failed to remove A.P. from the school, intervene in the alleged sexual harassment, or otherwise protect Jane

Doe from A.P.'s actions. Thus, the plaintiffs seek to hold the District liable for its failure to protect Jane Doe from the underlying actions of A.P., a private actor. These allegations are simply insufficient to state a § 1983 claim against the District and the individual defendants. Accordingly, these claims will be dismissed.

Moreover, even if the plaintiffs had met their burden to plead an affirmative act, they have not set forth sufficient factual allegations to support an Equal Protection claim. To state a claim under the Equal Protection clause, a plaintiff must show that she was purposefully discriminated against by a state actor because of her sex. *Johnston v. Univ. of Pittsburgh of Com. System of Higher Education*, 97 F. Supp. 3d 657, 667 (W.D. Pa. 2015). Accordingly, she must plead facts showing "(1) disparate treatment in relation to other similarly situated individuals, and (2) that the discriminatory treatment was based on sex." *Id.*

Here, the plaintiffs assert in a conclusory fashion that the defendants violated Jane Doe's Equal Protection rights when they failed to protect her from A.P.'s harassment. The complaint asserts that the defendants had a policy of dissuading students from reporting harassment, and that this policy or action by the defendants resulted in

the disparate treatment of female students and survivors of sexual assault. However, notably missing from the complaint are any allegations that the District or its employees treated other students who reported harassment or who were victims of sexual assault differently. In fact, the plaintiff bewilderingly asserts that non-victims of sexual assault were not forced to confront any attackers to support her argument that she was treated differently in violation of the Equal Protection clause.[4]

These conclusory and bare allegations are not enough to support an Equal Protection claim, and this claim will be dismissed.

### 4. The District and Individual Defendants are Immune from the Plaintiffs' State Law Tort Claims.

The plaintiffs also assert state law claims against the defendants, alleging claims of negligence and negligence *per se* against the District, as well as claims of intentional and negligent infliction of emotional distress against the individual defendants. The defendants argue that

---

[4] This analysis applies equally to the extent the plaintiffs are asserting a class-of-one theory, as the plaintiffs "must allege facts sufficient to make plausible the existence of . . . similarly situated parties." *Perano v. Twp. of Tilden*, 423 F. App'x 234, 238 (3d Cir. 2011). Here, the comparators the plaintiffs identify—non-victims of sexual assault—cannot be said to be similarly situated for purposes of an Equal Protection claim.

they are entitled to immunity from these state law claims under Pennsylvania's Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. Cons. Stat. § 8541.

The PSTCA provides immunity to local agencies and their employees "for any damages on account of any injury to a person or property" caused by the agency or its employees. § 8541. This immunity is broad and all-encompassing, except for nine enumerated instances in which this immunity does not apply and may subject the agency to liability. 42 Pa. Cons. Stat. § 8542(b). The plaintiffs contend that their negligence claims fit within the ninth exception, the sexual abuse exception, which waives immunity for "[c]onduct which constitutes an offense enumerated under section 5551(7) . . . if the injuries to the plaintiff were caused by actions or omissions of the local agency which constitute negligence." § 8542(b)(9). "Sexual abuse" cross references various criminal statutes, including 18 Pa. Cons. Stat. § 3124.1, of which the minor assailant, A.P., was adjudicated guilty. *See* 42 Pa. Cons. Stat. § 5551.

However, we cannot conclude that the allegations in the complaint, which entail conduct occurring in the school setting *after* Jane Doe was

sexually assaulted by A.P., fall within the sexual abuse exception to constitute a waiver of immunity in this case. As one court in this district has explained, the alleged sexual abuse "must result from the municipality's 'acts or omissions.'" *Doe v. Williamsport Area Sch. Dist.*, 2023 WL 6929316, at *13 (M.D. Pa. Oct. 19, 2023). Thus, courts that have applied the sexual abuse exception have done so in cases in which the alleged sexual abuse was perpetrated on school property, such that it can be said that the negligent actions of the school or its employees were the proximate cause of the plaintiff's injuries. *See e.g.*, *J.R. by and through Mr. R.R. v. Greater Latrobe Sch. Dist.*, -- F. Supp. 3d --, 2023 WL 5510395, at *16 (W.D. Pa. Aug. 25, 2023); *Doe by Brown v. Harrisburg Sch. Dist.*, 2020 WL 4584372, at *5 (M.D. Pa. Aug. 10, 2020); *see also Doe v. Williamsport Area Sch. Dist.*, 2023 WL 6929316, at *15 (refusing to apply the sexual abuse exception where the agency's duties arose after the sexual abuse).

While the plaintiffs allege that the sexual harassment by A.P. stemmed from the prior sexual assault, we do not believe that the waiver encompasses sexual harassment as the plaintiff has alleged here. As one court in this district noted when considering the statutory construction

of the sexual abuse exception, "[i]f the PSTCA's drafters wanted the 'sexual abuse' waiver to sweep more broadly than the criminal statutes they referenced, they did not say so." *Reed v. Mount Carmel Area Sch. Dist.*, 2023 WL 6449429, at *7 (M.D. Pa. Oct. 3, 2023). Here, had Jane Doe's sexual abuse, as enumerated in 18 Pa. Cons. Stat. § 3124.1, occurred in the school setting and was a result of the school's negligence, we would have no trouble finding that the exception applies. However, the instant complaint encompasses alleged conduct that occurred after the sexual assault that is contemplated by the exception. Accordingly, we cannot conclude that the sexual abuse exception applies here, and the negligence claims against the District will be dismissed. *See Doe v. Williamsport Area Sch. Dist.*, 2023 WL 6929316, at *15.

With respect to the tort claims asserted against the individual defendants, we find that these defendants are entitled to immunity from these claims. Generally, employees of a local agency are entitled to the same immunity as the agency, provided that the employees were acting within the scope of their employment at the time of the alleged conduct. 42 Pa. Cons. Stat. § 8545. This immunity does not apply, however, "where their conduct amounts to 'actual malice' or 'willful misconduct[.]'"

*Sanford v. Stiles*, 456 F.3d 298, 315 (3d Cir. 2006) (quoting 42 Pa. Cons. Stat. § 8550). "Willful misconduct" is defined as conduct by which "the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such a desire can be implied." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994) (internal quotations and citations omitted).

As to the negligent infliction of emotional distress claim, our analysis with respect to the negligence claims against the District is equally applicable here. The negligent conduct alleged by the plaintiffs does not fit within the sexual abuse exception to the PSTCA, and thus, this claim will be dismissed as to the individual defendants. With respect to the intentional infliction of emotional distress claim, we conclude that even if the PSCTA does not provide immunity against this claim, the plaintiffs have not stated a claim against the individual defendants. *See K.A. ex rel. J.A. v. Abington Heights Sch. Dist.*, 28 F. Supp. 3d 356, 376 (M.D. Pa. 2014) (concluding that "the allegations of the tort of IIED are synonymous with an allegation of willful misconduct, . . . thereby preventing immunity from attaching[.]").

To state a claim for intentional infliction of emotional distress, a plaintiff must plead facts to show that the conduct of the defendants was "intentional, outrageous, or extreme conduct" that caused the plaintiff severe emotional distress. *K.A. ex rel. J.A.*, 28 F. Supp. 3d at 376 (quoting *Swisher v. Pitz*, 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005)). The Pennsylvania courts have characterized outrageous or extreme conduct as "conduct that is 'so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society.'" *Swisher*, 868 A.2d at 1230 (quoting *Reeves v. Middletown Athletic Ass'n*, 866 A.2d 1115, 1122 n.5 (Pa. Super. Ct. 2004)). Thus, only the most egregious conduct will qualify as "outrageous" for purposes of intentional infliction of emotional distress:

> Cases which have found a sufficient basis for a cause of action of intentional infliction of emotional distress have had presented only the most egregious conduct. *See e.g., Papieves v. Lawrence*, 437 Pa. 373, 263 A.2d 118 (1970) (defendant, after striking and killing plaintiff's son with automobile, and after failing to notify authorities or seek medical assistance, buried body in a field where discovered two months later and returned to parents (recognizing but not adopting section 46)); *Banyas v. Lower Bucks Hospital*, 293 Pa.Super. 122, 437 A.2d 1236 (1981) (defendants intentionally fabricated records to suggest that plaintiff had killed a third party which led to plaintiff being indicted for homicide); *Chuy v. Philadelphia*

*Eagles Football Club*, 595 F.2d 1265 (3d Cir. 1979) (defendant's team physician released to press information that plaintiff was suffering from fatal disease, when physician knew such information was false).

*Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998).

Here, the plaintiffs' complaint merely alleges inaction on the part of the individual defendants; that is, that they should have done more to curb the harassment perpetrated by A.P. These allegations fall woefully short of what is needed to support a claim for extreme or outrageous conduct resulting in intentional infliction of emotional distress. Accordingly, this claim will be dismissed.

### 5. <u>The Breach of Contract Claim Fails as a Matter of Law.</u>

Finally, the District challenges the plaintiffs' breach of contract claim. The plaintiffs assert that the District breached the Riverside Junior/Senior High School Student Handbook when it failed to inform Jane Doe of the formal complaint procedures for reporting harassment and failed to conduct a formal investigation into her complaints of harassment. For its part, the District contends that the student handbook is not an enforceable contract.

To plead the existence of a contract under Pennsylvania law, the plaintiff must allege "(1) the existence of a contract, including its

essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999). While we have not found any caselaw speaking specifically to public high school student handbooks, courts in Pennsylvania have "declined to construe the student handbook of a public university as a contract between the public university and the student." *Cohn v. Pennsylvania State Univ.*, 2020 WL 738496, at *9 (E.D. Pa. Feb. 12, 2020) (quoting *Tran v. State Sys. of Higher Education*, 986 A.2d 179, 183 (Pa. Commw. Ct. 2009) (internal quotation marks and citations omitted). Thus, courts have routinely dismissed breach of contract claims premised on an alleged breach of a student handbook. *See e.g.*, *Borrell v. Bloomsburg Univ.*, 955 F. Supp. 2d 390, 408 (M.D. Pa. 2013); *Carroll v. Millersville Univ. of PA*, 2019 WL 2423268, at *8 (E.D. Pa. June 6, 2019).

We similarly conclude that the plaintiffs' breach of contract claim based on an alleged breach of the student handbook fails as a matter of law. Accordingly, this claim will be dismissed.

## IV.   Conclusion

For the foregoing reasons, the defendants' motion to dismiss (Doc. 18) will be GRANTED IN PART and DENIED IN PART as follows:

31

1. The motion will be GRANTED with respect to the Title IX retaliation claim, § 1983 claims, state law claims, and claim for punitive damages against the District;

2. The School Board will be DISMISSED as a defendant;

3. The motion will be GRANTED as to the § 1983 claims and claims of intentional and negligent infliction of emotional distress against Presley, Lazor, and Brennan; and

4. The motion will be DENIED as to the Title IX discrimination claim against the District.

An appropriate order follows.


*s/ Daryl F. Bloom*
Daryl F. Bloom
United States Magistrate Judge